UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENCHMARK INVESTMENTS, INC.<br>d/b/a KINGSWOOD CAPITAL MARKETS,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>SHIFTPIXY, INC.,<br><br>　　　　　　　　　　　　　Defendant. | Case No.: 1:21-cv-01988<br><br>**COMPLAINT** |

Plaintiff, Benchmark Investments, Inc., ("Benchmark"), through undersigned counsel, as and for its Complaint against defendant ShiftPixy, Inc. ("ShiftPixy"), alleges as follows:

**PARTIES**

1. Benchmark is an Arkansas corporation with its principal offices in Stockbridge, Georgia and executive offices in New York, New York.

2. ShiftPixy is a Wyoming corporation with its principal offices in Miami, Florida.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states.  Plaintiff demands a jury trial.

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in New York, New York.

5. The parties have also contractually agreed to that venue is proper in the United States District Court Southern District of New York and consented to jurisdiction in this Court.

## STATEMENT OF FACTS

6.Benchmark, which does business as Kingswood Capital Markets ("Kingswood"), is a middle market investment bank that provides a variety of Investment Banking and Advisory services including Equity Financing, Debt Financing and Private Equity Banking.  Joseph Rallo ("Rallo") is the Chief Executive Officer of Kingswood and David Boral ("Boral") is the President.

7.On January 13, 2021, ShiftPixy engaged Kingswood to act as the book runner and lead left underwriter in connection with an initial public offering ("IPO") of securities of a special purpose acquisition company ("SPAC"), Agile Human Capital, Inc. with ShiftPixy acting as the sponsor of the SPAC.  The engagement letter is attached hereto as **Exhibit A**.

8.The proposed transaction was fairly unique because typically an individual, or a group of individuals, acts as the SPAC sponsor rather than an already publicly traded company. Boral and Rallo had recently proposed this strategy for another publicly traded company and the transaction was wildly successful.  Boral and Rallo brought the idea to ShiftPixy's CEO, Scott Absher ("Absher"), and Absher and his company decided to move forward with the plan.

9.Shortly after executing the first Engagement Letter, ShiftPixy engaged Kingswood to act as the book runner and lead left underwriter in connection with an IPO for three other SPACS: Technology Human Capital, Inc. (**Exhibit B**), Health Human Capital, Inc. (**Exhibit C**), and Firemark Global Inc. (**Exhibit D**).

10.In Section 1 of each engagement letter, ShiftPixy agreed to engage Kingswood for a period ending on the earlier of one year from the date of the particular engagement letter or the consummation of the related offering (the "Engagement Period").

11. The exclusivity of Kingswood's engagement during this Engagement Period is made clear in Section 8 of the agreement which states that:

> If this Agreement is terminated by the company for any reason other than Kingswood's failure to proceed with preparation for the Offering in good faith (i) the exclusive nature of Kingswood's engagement as provided for in Paragraph 1 hereof shall continue through the conclusion of the Engagement Period . . . .[1]

12. Boral and Rallo immediately got to work on the first SPAC, Agile Human Capital, Inc., and created a working group for the transaction. They introduced ShiftPixy to experienced issuer's counsel, Loeb & Loeb LLP. They set ShiftPixy up with a trustee for the offering proceeds, Continental Stock Transfer & Trust Company. They also arranged for auditors and various other third-party professionals to help guide ShiftPixy through the process. By February 5, 2021, less than three-weeks after being engaged, Kingswood was nearly ready to file the Registration Statement that would set the offering in motion.[2]

13. On February 5, 2021, Rallo and Boral launched an IPO for another SPAC and notified clients such as ShiftPixy to give them an example of a successful SPAC IPO. Absher called Boral to congratulate him and then inexplicably announced that he was terminating the four engagement letters and was going to engage a competing investment bank, A.G.P. / Alliance Global Partners Corp. ("AGP"), to consummate the IPOs. Benchmark proposed splitting the economics of the transaction with AGP and remaining as lead underwriter. Absher agreed to that and said he would speak with AGP about the proposal. Later that day, after not having heard back from Absher, Boral and Rallo spoke with David Bocchi, head of investment banking at

---

[1] Other portions of the engagement agreements are non-binding and are intended to be reserved for the subsequent underwriting agreements.

[2] On February 14, 2021, issuer's counsel distributed a second draft of the Form S-1 again referencing Kingswood as the underwriter. ShiftPixy's general counsel quickly responded that the distribution of the Registration Statement was "in error" and that ShiftPixy had "determined not to proceed as the sponsor of the Agile Human Capital, Inc. SPAC."

AGP.  Bocchi offered to let Benchmark be co-manager (*i.e.*, a position subservient to AGP) and share in 25% of the financial benefits of the transaction.

14. Rallo and Boral were shocked.  AGP had never before underwritten a SPAC IPO and had no experience in this kind of transaction.  The idea that AGP could successfully launch four SPACs for the same company seemed ludicrous.  Moreover, AGP's proposal that Benchmark take a backseat was unacceptable given that Benchmark created the transaction in the first instance.

15. Nevertheless, Benchmark was willing to negotiate with AGP to avoid litigation and to further ShiftPixy's interests.  On February 5, 2021, counsel for Benchmark sent a letter to the Absher reminding him of the exclusivity of their engagement but reiterated in writing that Benchmark was willing to have AGP join the IPO as co-underwriter and share in 50% of the economics of the deal. **Exhibit E**.  On February 5, 2021, ShiftPixy's General Counsel, Robert Gans ("Gans") sent a response in which he terminated the engagement letters and informed Benchmark that ShiftPixy would be using AGP exclusively to consummate the SPAC IPOs. **Exhibit F**.

16. Notably, Gans conceded that "Kingswood has fulfilled its obligations under the Engagement Letter to date", yet argued that ShiftPixy is free pursue a SPAC IPO with another investment bank because Kingswood's exclusivity rights, "are expressly limited to any transaction involving the SPAC that is the subject of the particular Engagement Letter."

17. Put simply, ShiftPixy is taking the cynical view that Kingswood's exclusivity rights under the engagement letters can be circumvented merely by creating a new shell company to act as the SPAC and launch the same exact IPO proposed by Boral and Rallo but with a different investment bank.

18. This bad faith reading of the engagement letters renders the exclusivity provisions meaningless and clearly frustrates the intentions of the parties to bind ShiftPixy to use Kingswood as its underwriter on any type of financing that ShiftPixy engaged in during the Engagement Period.

19. This same bad faith interpretation also renders the following provision meaningless:

> If within the twelve (12) months following the termination date of this agreement and/or Closing, if the Company completes any financing of equity, equity-linked or debt or other capital raising activity of the Company . . . with any investors contact by Kingswood during the Engagement Period, then the Company will pay to Kingswood upon the closing of such financing the compensation set forth in Section 7 herein.

20. As with the exclusivity provision, if "Company" is limited to the specific SPAC in the engagement letter then this provision affords Kingswood no protection whatsoever. According to ShiftPixy's reading of the engagement letters, it would be free to have Kingswood introduce ShiftPixy to its valuable institutional investors, then terminate the engagement, create a new shell company and launch an IPO with all of those same investors without ever compensating Kingswood.

21. Such an interpretation of the engagement letters is clearly in bad faith and is deliberately designed to circumvent Benchmark's rights under the contract.

## CAUSE OF ACTION

### COUNT ONE
### Breach of Contract

22. Plaintiff hereby repeats and realleges the allegation in Paragraphs 1 through 21 as if fully set forth herein.

23. Section 12 of each engagement agreement contains the following choice of law provision:

> This engagement letter shall be deemed to have been made and delivered in New York City and both this engagement letter and the transactions contemplated hereby shall be governed as to validity, interpretation, construction, effect and in all other respects by the internal laws of the State of New York, without regard to the conflict of laws principles thereof.

24. Every contract has an implied duty of good faith and fair dealing in the course of its performance under New York law.

25. ShiftPixy has breached the duty of good faith and fair dealing by deliberately evading Benchmark's contractual right to be the exclusive underwriter for any SPAC IPO for which ShiftPixy would be the sponsor.

26. As a result of ShiftPixy's breach, Benchmark has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Benchmark is entitled to a judgment against ShiftPixy for: (a) compensatory damages in an amount to be proven at the trial; (b) prejudgment interest; (c) all costs and fees, including attorneys' fees; and (d) all other and further relief the Court deems just and proper.

Dated: New York, New York  
      March 8, 2021

HERSKOVITS PLLC

By: _____  
    Robert L. Herskovits (RH-2586)  
    Joseph P Allgor (JA-0798)  
Attorneys for Benchmark Investments, Inc.  
120 Wall Street, 25th Floor  
New York, NY 10005  
(212) 897-5410  
robert@herskovitslaw.com